

**FILED**
**Mar 20, 2023**
**01:28 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Lisa J. Cook | ) Docket No. 2021-05-0644 |
| | ) |
| v. | ) State File No. 57259-2020 |
| | ) |
| Newton Nissan of Gallatin/ | ) |
| Newton Ford, LLC, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) Heard February 22, 2023 |
| Compensation Claims | ) via Microsoft Teams |
| Dale A. Tipps, Judge | ) |

---

### Affirmed and Remanded

---

In this interlocutory appeal, the employer asserts the trial court erred in ordering it to provide a revised panel of pain management specialists. The employee suffered a compensable injury to her left wrist. After being evaluated by several physicians, she was referred to a physiatrist and pain management specialist who offered conservative care and opined that she did not qualify for a diagnosis of complex regional pain syndrome. After several visits, he indicated he had nothing else to offer the employee and referred her back to her previous treating physician. The employee was then seen by an osteopathic physician who subsequently referred her to a pain management clinic. Two business days after this referral was made, the employer offered the employee a panel of pain management specialists consisting of the physiatrist who previously treated and released her and two physiatrists approximately 170 miles from the employee's residence. The employee objected to this panel. At the expedited hearing, the employer argued that the pain management referral was not medically necessary and, even if it was, the employer had offered a proper panel of specialists from which the employee must select a provider. The employee asserted that the panel was defective and that the physician's direct referral to a specific pain management clinic should be enforced. The trial court concluded the referral was medically necessary and ordered the employer to provide a new panel of pain management specialists, and the employer has appealed. After careful consideration, we affirm the decision of the trial court and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin joined. Judge Meredith B. Weaver concurred in part and dissented in part.

1

Gregory H. Fuller and Chris G. Rowe, Knoxville, Tennessee, for the employer-appellant, Newton Nissan of Gallatin/Newton Ford, LLC

R. Steven Waldron, Murfreesboro, Tennessee, for the employee-appellee, Lisa J. Cook

## Factual and Procedural Background

Lisa J. Cook ("Employee") worked for Newton Nissan of Gallatin/Newton Ford, LLC ("Employer") as a salesperson. On August 4, 2020, Employee was preparing a vehicle for transport to a customer when a defective rear hatch of the vehicle fell onto her left wrist and hand. She reported the incident to a manager but was not offered a panel of physicians at that time. Although the incident occurred in the morning, Employee was able to complete her shift before deciding to go to a local emergency room that evening. Emergency room personnel noted left wrist tenderness, but X-rays revealed no fractures or other deformities. Her left arm was placed in a splint, and she was offered pain medication, which she declined because she had already taken prescription pain medication she had previously been prescribed for an unrelated condition.

Approximately six weeks later, Employee sought treatment at an orthopedic practice where she saw a nurse practitioner who treated her for a left wrist contusion and placed her arm in a fiberglass cast. She also underwent physical therapy. Subsequently, an MRI revealed no acute findings. However, due to Employee's complaints of persistent pain, the nurse practitioner referred Employee to Dr. Kyle Joyner, an orthopedic surgeon with Tennessee Orthopedic Alliance.[1]

In March 2021, Employee was evaluated by a nurse practitioner at Tennessee Orthopedic Alliance, who diagnosed left wrist tenosynovitis and offered Employee a first extensor compartment injection. The following month, Employee was seen by Dr. Joyner, whose assessment included "possible posttraumatic neuritis" and "causalgia of the left upper extremity."[2] He then referred Employee to Dr. Jeffrey Hazlewood, a physical medicine, rehabilitation, and pain management specialist, for evaluation of possible complex regional pain syndrome ("CRPS").

---

[1] Employee acknowledged that, although she initially sought treatment on her own, Employer subsequently accepted the claim as compensable and authorized treatment with the provider she was already seeing. For its part, Employer acknowledged that, until the provision of the pain management panel that is the subject of the current appeal, it never provided Employee with a panel of physicians for selection of an authorized treating physician as required by Tennessee Code Annotated section 50-6-204(a)(3)(A)(i).

[2] "Causalgia" is defined as "a complex regional pain syndrome characterized by burning pain and marked sensitivity to touch . . . in the distribution of an injured peripheral nerve." *See* "causalgia," https://openmd. com/define/causalgia (last visited March 17, 2023).

2

In his April 14, 2021 report, Dr. Hazlewood noted Employee's complaints of pain and significant limitations in her wrist range of motion. In addition, she was "quite tender" over the left radial wrist tendons. However, he saw "no signs" of CRPS in her left arm, with "no color changes, temperature changes, hair changes, nail changes, skin changes, etc." Dr. Hazlewood commented that he had reviewed reports from Dr. Joyner, physical therapy notes, and an MRI that showed a soft tissue contusion but no structural pathology. In Dr. Hazlewood's view, Employee's complaints and his physical findings were consistent with a diagnosis of deQuervain's tenosynovitis. Dr. Hazlewood also noted that "it is difficult to explain why she is getting worse, not better, after all this treatment and time," although he also felt that she exhibited "legitimate pain" without any "psychosomatic overlay." He felt there were not many treatment options left but recommended a trial of Voltaren gel and a possible trial of Cymbalta "for a brief period of time as she transitions back into her work." Dr. Hazlewood noted that "[i]f these two options don't work, I literally don't know of anything else to provide unfortunately." He did not anticipate that long term pain management would be medically necessary.

The following month, Employee reported to Dr. Hazlewood that the Voltaren gel had not decreased her symptoms. He noted that she had previously tried other pain medications, a TENS unit, physical therapy, and an injection, none of which had helped. Dr. Hazlewood commented that "[t]he only treatment option left that I have is a trial of Cymbalta." He then stated, "[i]f this doesn't work, there is really not much else I know to provide from my standpoint."

In June 2021, Employee advised Dr. Hazlewood that the Cymbalta had not helped and had caused side effects that led to her discontinuing it. In his June 7, 2021 report, Dr. Hazlewood again reviewed her treatment to that point and commented: "This lady has had multiple casting and splinting in the past through her orthopedic surgeon and nothing has helped. Dr. Joyner did not feel she was a surgical candidate. She continues to work her regular job and just hurts." Dr. Hazlewood reiterated his diagnosis of deQuervain's tenosynovitis in her left arm and stated, "I have no explanation for her ongoing pain." He then said, "I have done everything I can do" and commented that "she is not an appropriate candidate for opioids under the evidence based guidelines for a tendinitis diagnosis that has not even had surgery." Finally, Dr. Hazlewood recommended she call Dr. Joyner's office and explain that he (Dr. Hazlewood) has "nothing else to offer from a conservative standpoint." He then stated he would be glad to refer Employee back to Dr. Joyner as "I have no further options of treatment." Despite these comments, Dr. Hazlewood also noted, "I will see her back in three months for follow up."[3]

---

[3] During the expedited hearing, Employee acknowledged that she called and cancelled the follow-up appointment with Dr. Hazlewood that had been scheduled for September 20, 2021. She testified she cancelled the appointment because Dr. Hazlewood had told her he had nothing else to offer her.

In June 2021, Dr. Joyner noted that Employee had returned to his office after "she was discharged by Dr. Hazlewood." Dr. Joyner diagnosed "posttraumatic neuritis involving the radial sensory nerve." He recommended a stellate ganglion block and referred Employee to an osteopathic doctor in his practice, Dr. Michael Bowman, for this treatment. He then explained that, if the block did not relieve her symptoms, he had "no further treatment recommendations to offer her."

On August 11, 2021, Employee was evaluated by Dr. Bowman, who felt she met the "Budapest criteria for complex regional pain syndrome." He noted that Employee "has a lot of hypersensitivity, color change, temperature change and she says her nails have changed as well." She was taking gabapentin, and he added another medication "for hypersensitivity and neuropathic pain." He also indicated he wanted to proceed with the stellate ganglion block, which was subsequently done on August 26. In September 2021, Dr. Bowman noted that Employee had ongoing left wrist pain and swelling and that the block had only temporarily improved her symptoms with significant side effects. At that visit, Dr. Bowman recommended additional pain medication and occupational therapy.

When Employee returned to Dr. Bowman in November 2021, she reported no significant improvement in her symptoms despite the extensive and various conservative treatments that had been tried. Dr. Bowman elected to try one other medication but noted that, if the new medication resulted in no improvement, he had no other recommendations for conservative care. In such circumstances, he would either order a functional capacity evaluation or refer Employee to Vanderbilt for additional evaluation.

On January 4, 2022, Dr. Bowman's office issued a "Referral Communication Form," which recommended that Employee be referred to the "Vanderbilt Complex Regional Pain Syndrome Center."[4] The form also listed a specific address and telephone number for the clinic in Nashville.[5] Two days later, Employer offered Employee a panel of pain management specialists that included Dr. Hazlewood and two pain management physicians in Knoxville, both approximately 170 miles from Employee's residence. Employee objected to this panel, arguing that Dr. Hazlewood was "the only doctor on the panel Employee could realistically see" and that he had already evaluated, treated, and discharged Employee, indicating he had no other treatment to offer her. As a result, in Employee's view, Employer's panel was invalid and the direct referral to Vanderbilt should be honored.

---

[4] Employee had an appointment scheduled with Dr. Bowman for January 5, 2022. She contacted his office on January 4, asked for the referral to Vanderbilt, and cancelled the January 5 appointment.

[5] Although the referral form included in the record is dated January 4, 2022, Employee's petition for benefits was filed December 15, 2021, and indicates "Employee seeks approval and scheduling of an appointment at Vanderbilt Complex Regional Pain Syndrome Center" based on Dr. Bowman's referral.

4

Employer argued that its panel was valid. It noted that, despite the comments in his June 2021 report, Dr. Hazlewood had scheduled a follow-up appointment that Employee subsequently cancelled. Consequently, in Employer's view, it was proper to include him on the panel since he is qualified to provide pain management treatment. Employer further noted that the other two physicians listed on its panel were located within the 175-mile distance as required by section 50-6-204(j)(2). Finally, it argued that Dr. Bowman's referral form was invalid because there is no clinic with that precise title at Vanderbilt.

Following an expedited hearing, the trial court concluded that Employer's panel was defective because, "at the time [Employer] gave the panel, Dr. Hazlewood had released [Employee], did not know why she was hurting, and had no treatment to offer her." The court also rejected Employer's argument that Dr. Bowman's referral form was defective because of the inaccurate name of the Vanderbilt clinic, concluding that Employer's argument "borders on the absurd" given that the address and telephone number of the Vanderbilt clinic included on the referral form were accurate. Finally, the Court rejected Employer's argument that the referral was for a "second opinion" as contemplated in Tennessee Code Annotated section 50-6-204(j)(3), concluding that subsection 204(j)(3) was inapplicable under the circumstances.

As a result, the trial court ordered Employer to provide a revised panel of pain management specialists from which Employee could select a provider. The court expressed concern that including two Knoxville specialists on the panel was "a cynical attempt to limit [Employee's] choices," but it acknowledged that Employer has a statutory right to include pain management specialists as far away as 175 miles from Employee's residence or place of employment. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

5

**Analysis**

On appeal, Employer has raised three issues, which we restate as: (1) whether Tennessee Code Annotated section 50-6-204(j)(3), which states an employee is not entitled to a "second opinion" on the issue of pain management, applies in this case; (2) whether the trial court erred in concluding the pain management referral was medically necessary; and (3) whether the trial court erred in concluding employer's proposed panel of pain management specialists was deficient. For her part, Employee has raised a fourth issue: whether the trial court erred by not ordering Employer to "honor the direct referral from Dr. Bowman to Vanderbilt Pain Management Center."

To fully evaluate the relevant statutory and regulatory language in this case, it is necessary to consider some historical context. In 2012, Tennessee's General Assembly added subsection (j) to Tennessee Code Annotated section 50-6-204 to address the provision of pain management treatment. Subsection (j)(1) facilitates a referral for pain management treatment "[i]f a treating physician determines that pain is persisting for an injured or disabled employee beyond an expected period for healing." Tenn. Code Ann. § 50-6-204(j)(1); *see also Smith v. Goodall Bldgs., Inc.*, No. M2017-01935-SC-R3-WC, 2018 Tenn. LEXIS 515, at \*9 (Tenn. Workers' Comp. Panel Sept. 14, 2018) ("Subsection (j) applies when an employee is undergoing long-term treatment for chronic pain."). Pain management may "encompass[] pharmacological, nonpharmacological[,] and other approaches to manage chronic pain." *Id.* In subsection (j)(2)(A), the General Assembly also provided that, "in light of the variation in availability of qualified pain management resources across the state," a panel of "qualified" pain management physicians must be no more than 175 miles from the injured or disabled employee's residence or place of employment. Tenn. Code Ann. § 50-6-204(j)(2)(A).

In considering these amendments, the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel ("Appeals Panel") explained:

> Based on the statute's language and its legislative history, no conclusion can be reached other than that the General Assembly intended to exempt pain management physicians from [Tennessee Code Annotated section] 50-6-204(a)(4)(A)'s "community" rule and to require only that a pain-management physicians' [sic] offices must be within 175 miles of the employee's residence or place of employment. The purpose of the rule was to ensure an adequate available pool of qualified pain management physicians for workers' compensation beneficiaries located in rural areas.

*Patterson v. Prime Package & Label Co.*, No. M2013-01527-WC-R3-WC, 2014 Tenn. LEXIS 1037, at *9-10 (Tenn. Workers' Comp. Panel Dec. 22, 2014).[6]

Further, Tennessee Code Annotated section 50-6-204(j)(3) addresses an employee's entitlement to a "second opinion." That subsection states that an injured employee "is not entitled to a second opinion on the issue of impairment, diagnosis[,] or prescribed treatment relating to pain management." It further explains that "on no more than one (1) occasion, if the injured or disabled employee submits a request in writing to the employer" expressing concerns about his or her pain management treatment, the employer is obligated to "initiate and participate in utilization review . . . for the limited purpose of determining whether the prescribed pain management meets medically accepted standards."

Finally, the General Rules of the Workers' Compensation Program promulgated by the Bureau of Workers' Compensation address the composition of medical panels. The pertinent rule provides that, to be listed on a medical panel, "[a] medical provider must be qualified, willing, and able to treat in a timely manner the injury or condition reported." Tenn. Comp. R. & Regs. 0800-02-01-.06(1) (2018).

In the present case, Employer argues that Dr. Bowman's referral to a pain management clinic was for a "second opinion," which it contends is prohibited by the express terms of subsection (j)(3). Employee counters that subsection 204(j)(3) only prohibits the *employee* from seeking a second opinion regarding pain management.

*Applicability of Section 50-6-204(j)(3)*

With respect to the first issue raised by Employer, we agree with the trial court that Tennessee Code Annotated section 50-6-204(j)(3) is inapplicable in this case. The language upon which Employer relies in subsection 204(j)(3) has been considered by Tennessee's appellate courts. In interpretating this language, the Appeals Panel explained:

> [W]ith regard to "impairment, diagnosis, or prescribed treatment," the "injured or disabled employee is not entitled to a second opinion." The purpose of section 50-6-204(j)(3) was outlined by Senator Jack Johnson: "'What we're trying to attack here . . . is the abuse and overutilization of [Schedule II, III, and IV] drugs.' The bill, [Senator Johnson stated], was meant *to prevent workers' compensation beneficiaries from 'unfortunately becoming addicted and perhaps doing some doctor shopping.'*"

---

[6] Contemporaneously, the General Assembly also added subsection (f) to Tennessee Code Annotated section 50-6-124 and expressed its intent behind these changes: "It is the intent of the general assembly to ensure the availability of quality medical care services for injured or disabled employees and to manage medical costs in workers' compensation matters by eradicating prescription drug abuse through the employment of the [utilization review system] to review any healthcare provider prescribing one (1) or more Schedule II, III, or IV controlled substances for pain management." Tenn. Code Ann. § 50-6-124(f).

*Smith*, 2018 Tenn. LEXIS 515, at \*10 (citing *Patterson*, 2014 Tenn. LEXIS 1037, at \*7 n.3 (quoting Hearing on S.B. 3315 before the Senate Finance, Ways, and Means Committee, 107th Gen. Assemb., (Apr. 23, 2012) (statement of Sen. Jack Johnson)) (emphasis added)). Thus, based on the legislative history as expressed by the Appeals Panel above, we conclude subsection (j)(3) prohibits *an employee* who is undergoing pain management treatment from requesting a second opinion, but it does not purport to limit a treating physician's ability to request a medical evaluation by a different provider.

This interpretation is further bolstered when the second sentence of subsection (j)(3) is considered. That sentence specifically references the *employee's* right to request that his or her employer initiate and participate in utilization review of prescribed pain management treatment in certain circumstances. Thus, when subsection (j)(3) is read in its entirety and considered in light of the legislative history noted above, we conclude that Tennessee Code Annotated section 50-6-204(j)(3) prohibits an employee who is undergoing pain management treatment from obtaining, at the employer's expense, "a second opinion on the issue of impairment, diagnosis, or prescribed treatment relating to pain management." Tenn. Code Ann. § 50-6-204(j)(3). It does *not* limit the ability of a treating physician to request another medical opinion or refer an injured worker to another provider for a medical evaluation or treatment if the physician determines such a referral is medically necessary.

*Medical Necessity of Pain Management Referral*

Next, Employer argues that Employee failed to come forward with sufficient evidence that Dr. Bowman's referral to a pain management clinic was medically necessary. In its brief, Employer asserts that "medical necessity is a threshold issue that must be addressed before [a court may order] the Employer to honor the referral." In response, Employee correctly noted in its brief that Tennessee's Workers' Compensation Law provides a presumption of medical necessity for "[a]ny treatment recommended by a physician or chiropractor selected pursuant to this subdivision (a)(3) *or by referral*, if applicable." Tenn. Code Ann. § 50-6-204(a)(3)(H) (emphasis added). Here, Employee was referred to Dr. Bowman by an authorized treating physician, Dr. Joyner. Subsequently, Dr. Bowman recommended a referral to a pain management clinic. Thus, under the express terms of section 204(a)(3)(H), such treatment is presumed medically necessary, and it was Employer's burden to come forward with evidence rebutting that presumption.

In support of its argument, Employer asserts that the trial court incorrectly weighed the expert medical testimony of Dr. Hazlewood with that of Dr. Bowman. It further argued that, because Dr. Hazlewood disagreed with Dr. Bowman's diagnosis of complex regional pain syndrome, and Dr. Bowman deferred to Dr. Hazlewood with respect to the CRPS diagnosis, Dr. Hazlewood's testimony was entitled to greater weight and supported its argument that the pain management referral was not medically necessary.

It is well established that, "[w]hen faced . . . with conflicting medical testimony . . . , it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that it contains the more probable explanation." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991) (internal quotation marks omitted). We review such determinations under an abuse-of-discretion standard. *Barnes v. Yasuda Fire & Marine Ins. Co.*, No. W2000-02559-SC-WCM-CV, 2001 Tenn. LEXIS 696, at *11 (Tenn. Workers' Comp. Panel Sept. 24, 2001) ("we cannot say the trial court abused its discretion" by concluding "the opinion of certain experts should be accepted over that of other experts").

Dr. Bowman, who is board certified in anesthesiology and pain management, testified he had previously worked at the Vanderbilt clinic to which he had referred Employee. He stated that, in his opinion, Employee had met the criteria for a CRPS diagnosis. One purpose of his referral was to request another specialist to assess whether Employee's CRPS had persisted after his treatment. He also discussed other treatment options a pain management clinic may choose to recommend, including "alternative medication management," "cognitive behavioral therapy," spinal cord stimulation, and neuromodulation. Although Dr. Bowman acknowledged that Employee's CRPS symptoms had improved as of the last date he examined her, he nevertheless wanted another provider "to see if there's any further cutting-edge things that I am not aware of." Ultimately, Dr. Bowman opined that his referral to another provider was necessary "[f]or evaluation and treatment and consideration of any more advanced interventions that I am not able to perform."

During his deposition, Dr. Hazlewood, who is board certified in physical medicine and rehabilitation as well as pain management, testified that he was unsure whether Employee had been referred to him for physiatry or pain management treatment. He only recalled that "she came to me for treatment of her left wrist pain that was not felt to be a surgical candidate." During his first physical examination, he saw "no signs of CRPS." Dr. Hazlewood concluded Employee suffered from "tendonitis, not CRPS." He later described her condition as "[s]evere recalcitrant deQuervain tenosynovitis." Dr. Hazlewood then explained, "I didn't agree with permanent chronic pain management for tendonitis," and he commented that "there's not much else left I can do." Later during his deposition, Dr. Hazlewood testified that he told Employee, "I don't know what else to do here. You've failed all conservative treatment." Thereafter, he referred Employee back to Dr. Joyner. With respect to any subsequent appointments, Dr. Hazlewood explained, "I always will set a follow-up in case they say they can't operate and go back to pain management or physiatry. So I had her appointment just in case." Finally, Dr. Hazlewood testified that he was "willing to see [Employee] back for another visit if she wanted that." He explained that he is "always glad to reevaluate and see if there are any other options."

We conclude Employer's reliance on the difference of opinion between Dr. Hazlewood and Dr. Bowman as to the correct diagnosis, and Dr. Hazlewood's opinion that

9

Employee does not qualify for opioid medication treatment or spinal cord stimulation, is insufficient to rebut the presumption of medical necessity in favor of Dr. Bowman's referral to a pain management provider. Dr. Bowman made clear that his referral was not for any specific treatment but was for a pain management specialist to evaluate Employee's condition and consider whatever additional treatment options the provider felt were reasonable and necessary to treat her work-related condition. Thus, the evidence does not preponderate against the trial court's decision to accredit Dr. Bowman's opinions regarding the medical necessity of the pain management referral over those of Dr. Hazlewood.

*Panel of Specialists*

Next, Employer asserts that, even if Dr. Bowman's pain management referral was medically necessary, Employer had timely provided Employee a panel of pain management specialists as contemplated in Tennessee Code Annotated section 50-6-204(j)(1), and Employee is obligated to select a pain management provider from that panel. In response, Employee asserts that Employer's panel was defective because it included Dr. Hazlewood as one of the three options, who had already treated Employee, concluded he had nothing else to offer her, and referred her back to Dr. Joyner.[7]

As noted above, Bureau regulations require an employer to consider whether a provider is "qualified, willing, and able to treat in a timely manner the injury or condition reported" before that provider can be listed on a panel. Tenn. Comp. R. & Regs. 0800-02-01-.06(1). It is unrefuted that Dr. Hazlewood is qualified to provide pain management treatment. Thus, the question is whether, in a case where a provider has already evaluated, treated, and released an employee, indicating he has "nothing further to offer," that provider is "willing and able to treat . . . the injury or condition reported."

In the present case, Dr. Hazlewood summarized in his records and during his deposition the nature and extent of treatment Employee had received to the point when he released her. He commented that he had "no explanation for her ongoing pain" and told her, "I have done everything I can do." He further recommended she call Dr. Joyner's office and explain that he (Dr. Hazlewood) had "nothing else to offer from a conservative standpoint." He then stated he would be glad to refer Employee back to Dr. Joyner as "I have no further options of treatment." Moreover, during his deposition, Dr. Hazlewood acknowledged that he only scheduled a follow-up appointment "just in case." On the other hand, Dr. Hazlewood expressed a willingness to see Employee again and stated he was "always glad to reevaluate and see if there are any other options."

---

[7] Employee also asserted that the inclusion of two Knoxville specialists, who were approximately 170 miles from Employee's residence, was an improper attempt to force Employee back to Dr. Hazlewood, who Employer knew did not agree with the CRPS diagnosis and did not recommend opioid medication or a spinal cord stimulator. During oral argument, however, counsel for Employee acknowledged that the inclusion of the two Knoxville specialists technically complied with Tennessee Code Annotated section 50-6-204(j)(2)(A).

Although the issue is close, we conclude the evidence does not preponderate against the trial court's determination that, under the particular circumstances presented in this case, Dr. Hazlewood was not "willing and able to treat . . . the injury or condition reported" given his previous treatment of Employee and various statements he had made regarding his lack of other treatment options.[8] Therefore, we affirm the trial court's order compelling Employer to provide a revised panel of specialists.[9]

*Direct Referral to Vanderbilt Pain Management Clinic*

Finally, Employee argues that the trial court erred in not compelling Employer to honor Dr. Bowman's direct referral to Vanderbilt Pain Management Clinic. As the trial court explained, however, the provisions of Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii), which governs referrals to specialists, only applies in circumstances where the referring physician was "selected in accordance with this subdivision (a)(3)(A)." Because Dr. Bowman was not selected from a panel as described in subdivision 204(a)(3)(A), there is no statutory mechanism for the trial court to compel Employer to honor Dr. Bowman's direct referral to the Vanderbilt clinic.

Moreover, even if Dr. Bowman had been selected from a panel of physicians, we have previously addressed an injured worker's rights in the context of a referral. In *Rhodes v. Amazon.com, LLC*, No. 2018-01-0349, 2019 TN Wrk. Comp. App. Bd. LEXIS 24, at *3 (Tenn. Workers' Comp. App. Bd. June 11, 2019), the authorized physician made a direct referral. The employer accepted the referral and declined to offer a panel, and the employee

---

[8] In her dissent, our colleague notes that Dr. Hazlewood had scheduled a follow-up appointment and expressed a willingness to see Employee again even after telling her he had no further treatment to offer her. However, during his deposition, Dr. Hazlewood indicated he had scheduled the follow-up appointment "just in case" and that, if she returned, he planned merely to speak with Employee and her attorney. That testimony does not, in our opinion, evidence any intent to offer additional treatment. Moreover, our colleague cites our prior opinion in *Lee v. Federal Express*, No. 2020-08-0214, 2022 TN Wrk. Comp. App. Bd. LEXIS 29 (Tenn. Workers' Comp. App. Bd. July 2, 2022). In that case, the court had already entered a judgment that included entitlement to future medical benefits, and the employer had declined to authorize any further treatment because the treating physician had stated two years previously that he had no further treatment to offer her. *Id.* at *3. We conclude the circumstances of that case are distinguishable from the present case. Whereas the employer in that case was denying the employee any opportunity for authorized medical care with the physician identified in the judgment, the employer here has offered a panel for further care but included a physician who had already evaluated, treated, and released the employee from care, indicating he had no further treatment to offer her. In short, we conclude a trial court can consider whether unique circumstances of a given case impact an employer's compliance with the obligation to provide a panel of physicians in accordance with Tennessee Code Annotated section 50-6-204 and Tenn. Comp. R. and Regs. 0800-02-01-.06(1).

[9] To provide additional guidance to the parties and promote efficiency and economy, we take judicial notice of the fact that one of the other pain management specialists listed on Employer's original panel, Dr. William Kevin Bailey, passed away on September 11, 2022. *See* https://www.clickfh.com/obituaries/Dr-William-Kevin-Bailey?obId=25870381 (last visited March 17, 2023).

objected, insisting that he was entitled to a panel of physicians. *Id.* at \*5. We concluded that the statute gives only employers the choice whether to accept a direct referral or provide a panel of physicians. *Id.* at \*14 ("The statutory scheme . . . provides employers the option of accepting the referral or, instead, providing a panel of specialists."). Here, although the circumstances are the inverse from those in *Rhodes*, the statutory scheme remains the same. It is the employer's option to either accept a direct referral or provide a panel of physicians. Hence, we conclude the trial court did not err in declining to order Employer to authorize the direct referral to Vanderbilt Pain Management Clinic.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employer.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Lisa J. Cook | ) Docket No. 2021-05-0644 |
| | ) |
| v. | ) State File No. 57259-2020 |
| | ) |
| Newton Nissan of Gallatin/ | ) |
| Newton Ford, LLC, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) Heard February 22, 2023 |
| Compensation Claims | ) via Microsoft Teams |
| Dale A. Tipps, Judge | ) |

---

### Opinion Concurring in Part and Dissenting in Part

---

Meredith B. Weaver, J., concurring in part and dissenting in part.

I concur with the majority in all respects other than their conclusion that Employer did not offer a valid panel of pain management specialists. Regarding the panel of pain management specialists, the majority agreed with the trial court's determination that it was inappropriate for Employer to include Dr. Hazlewood on its panel and that a revised panel must be offered. Specifically, the majority concluded, under the circumstances presented in this case, the trial court did not err in determining that Dr. Hazlewood is not "willing and able" to treat Employee based on his previous statements that he had no further treatment to offer her. I respectfully disagree.

As outlined in the majority opinion, a provider must be "qualified, willing, and able to treat in a timely manner the injury or condition reported" before that provider can be listed on a panel. Tenn. Comp. R. & Regs. 0800-02-01-.06(1). Employee treated with Dr. Hazlewood from April to June of 2021, at which time he released her to return to Dr. Joyner. At that same time, he stated "I will see her back in three months for follow up." While he did also state he had no further treatment to offer, he clearly did not refuse to see Employee.

When he was deposed in May 2022, Dr. Hazlewood testified "I'm always glad and would love to see [Employee] back if she wants to come." He further testified that, as he had not seen her in nearly a year, he would reevaluate her condition. In *Lee v. Federal Express*, we determined that an employee's right to future medical treatment allowed her

to return to her physician even though that physician stated he had no further treatment for her. *Lee v. Federal Express*, No. 2020-08-0214, 2022 TN Wrk. Comp. App. Bd. LEXIS 29, at *11 (Tenn. Workers' Comp. App. Bd. July 5, 2022). We also noted in that case that the passage of time might allow for further testing and additional evaluation, as might also be indicated in the present case. *Id.*

This is not a case in which Dr. Bowman referred Employee for specific medical treatment that Dr. Hazlewood is unable to provide. As stated in the majority opinion, "Dr. Bowman made clear that his referral was not for any specific treatment but was for a pain management specialist to evaluate Employee's condition and consider whatever additional treatment options the provider felt were reasonable and necessary to treat her work-related condition." There has simply been no evidence presented that Dr. Hazlewood could not or would not perform that task, and, thus, I would reverse that portion of the trial court's decision.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Lisa J. Cook | ) | Docket No. 2021-05-0644 |
| | ) | |
| v. | ) | State File No. 57259-2020 |
| | ) | |
| Newton Nissan of Gallatin/ | ) | |
| Newton Ford, LLC, et al | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard February 22, 2023 |
| Compensation Claims | ) | via Microsoft Teams |
| Dale A. Tipps, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 20th day of March, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Gregory H. Fuller | | | | X | ghfuller@mijs.com cgrowe@mijs.com |
| Steven Waldron | | | | X | arlenesmith@wfptnlaw.com |
| Dale A. Tipps, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*O. Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov